[Cite as *State v. Campbell*, 2019-Ohio-583.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 18CA0005-M |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CURTIS CAMPBELL | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 17CR0699 |

DECISION AND JOURNAL ENTRY

Dated: February 19, 2019

SCHAFER, Presiding Judge.

{¶1} Defendant-Appellant, Curtis Campbell, Jr., appeals from his conviction in the Medina County Court of Common Pleas. For the reasons that follow, this Court affirms and remands.

I.

{¶2} On April 10, 2017, Ohio State Highway Patrol Trooper Joshua Grimm, while on duty, received a call from dispatch regarding a concerned citizen's report of a dark green Saturn "driving recklessly all over the roadway." In response, Trooper Grimm reported to the area indicated by the caller. Trooper Grimm watched traffic until he observed the vehicle described by the caller pass by, hit the brakes, and make a marked lanes violation. Deciding that the marked lanes violation constituted independent probable cause to initiate a traffic stop, Trooper Grimm pulled into traffic following the vehicle and activated his overhead lights.

{¶3}     The vehicle was extremely slow to pull over after Trooper Grimm activated his overhead lights, but eventually started to slow down.  As Trooper Grimm looked down to find the siren button he saw, out of the corner of his eye, an object come from the passenger side of the vehicle.  The vehicle then pulled over on to the right berm.  Trooper Grimm approached the vehicle and made contact with the driver while another officer on scene, Trooper Bissonnette, approached the passenger side of the vehicle and made contact with the passenger later identified as Mr. Campbell.  Upon discovering that the driver did not have proper identification or a valid driver's license, Trooper Grimm had the driver exit the vehicle, performed a pat-down for weapons, and then placed him temporarily in the rear of the patrol car.

{¶4}     Trooper Grimm then spoke with Trooper Bissonnette regarding Mr. Campbell.  Based on Mr. Campbell's strange behavior—slurred speech, talking fast, hard to understand—and the fact that he had not been wearing a seatbelt, Trooper Bissonnette decided to investigate further.  Standing next to the open passenger door, Trooper Grimm noticed a pen tube or straw with white residue on it under Mr. Campbell's feet, which he immediately assumed to be some sort of drug paraphernalia.  Trooper Grimm also observed residue of a white powder substance on Mr. Campbell's nostril, the side of his face, and on his shirt.  At that point, the officers detained Mr. Campbell and confiscated the pen tube.

{¶5}     Trooper Grimm then returned to speak with the driver, informed him of the pen tube with residue they had discovered at Mr. Campbell's feet, and asked if there was anything else in the vehicle that the officers should know about.  The driver admitted that there was a syringe in the driver side door pocket, but claimed that it was not his, rather, it belonged to a friend.  Officers found the syringe, not in the door pocket, but in the center console of the vehicle

between the driver and passenger seats. Upon further questioning, the officers determined that the driver was not impaired.

{¶6}    Trooper Grimm then reviewed the video of the initial traffic stop and clearly observed something coming from the passenger side of the vehicle. He relayed this information to Trooper Bissonnette. Trooper Bissonnette then searched the location where the object appeared to have been thrown out. He located and recovered two baggies containing a white powder and white rock substance. A field test of these substances at the scene confirmed that both baggies tested positive for cocaine.

{¶7}    The Medina County Grand Jury indicted Mr. Campbell for one count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(b), a felony of the fourth degree, and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree. The matter proceeded to a jury trial and the jury returned verdicts finding Mr. Campbell guilty on both counts of the indictment. The trial court entered a judgment of conviction and sentenced Mr. Campbell.[1] Mr. Campbell now timely appeals from his conviction for tampering with evidence, and raises two assignments of error for our review.

II.

**Assignment of Error I**

**Mr. Campbell's conviction for tampering with evidence under R.C. 2921.12(A)(1) is not supported by sufficient evidence. * * *[.]**

{¶8}    In his first assignment of error, Mr. Campbell argues that his conviction for tampering with evidence was not supported by sufficient evidence. A challenge to the sufficiency of a criminal conviction presents a question of law, which we review de novo. *State*

---

[1] An issue, not directly relevant to this appeal, regarding the sentencing and judgment entry is addressed herein.

*v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶9} Mr. Campbell was convicted of tampering with evidence in violation of R.C. 2921.12(A)(1), which provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *[.]" Thus, the three elements of this offense are:

> (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation.

*State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 11.

{¶10} Mr. Campbell argues that "because the State has not shown that Mr. Campbell was under investigation for a drug offense at the time he allegedly discarded the drugs from the car, he cannot, as a matter of law, be convicted of tampering with evidence." Mr. Campbell concedes that, at the time Trooper Grimm saw the objects come from the passenger side of the vehicle, an investigation for a marked lane change violation had been initiated. However, Mr. Campbell claims that, in order for the State's evidence that he threw the baggies of cocaine out of the vehicle to support the charge of tampering with evidence, "an investigation into

[Campbell]'s drug activity would have had to have been the reason, or one of the reasons, for the stop."

{¶11} Mr. Campbell asserts that the State needed to prove that an investigation into his drug activity was already underway, when the act of tampering occurred. This argument misconstrues the law insofar as it fails to recognize that *Mr. Campbell's knowledge* of a likely investigation is the relevant factor, not Trooper Grimm's basis for initiating the traffic stop. "[A] conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing *or likely official investigation* or proceeding." (Emphasis added.) *Straley*, 139 Ohio St.3d 339 at ¶ 19. Furthermore, the likelihood of an investigation "is measured at the time of the act of alleged tampering[,]" not at the time an officer initiates the a stop, as Campbell contends. *Id.* Therefore, the State had the burden "to prove beyond a reasonable doubt that at the time [Campbell concealed the cocaine], [he] knew that an investigation into [his drug possession] was likely to be instituted." *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, ¶ 22.

{¶12} There is no dispute as to the fact that Trooper Grimm did not initiate the traffic stop specifically to investigate Mr. Campbell. However, notwithstanding Mr. Campbell's contention, the State was not required to prove that an investigation into drug possession was in progress at the time of the act of tampering. *See State v. Cabrera*, 9th Dist. Lorain No. 13CA010434, 2014-Ohio-3372, ¶ 17 (Holding that, despite being arrested on an unrelated charge, a defendant's knowledge that illegal drugs in his possession are likely to be discovered and investigated, together with his actions in hiding the drugs, evidence his intention to impair the value or availability of evidence related to that likely investigation). It is sufficient to show that, when Mr. Campbell threw the drugs from the vehicle, he knew an investigation related to

the evidence he discarded, was about to be or likely to be instituted. *See State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, ¶ 119, citing R.C. 2921.12(A).

{¶13} Regarding the issue of the *likelihood* of an investigation, Mr. Campbell's argument is limited to the lone conclusory statement in his brief that "at the time the traffic stop was initiated there is nothing in this record to establish that the passenger, Mr. Campbell, was under investigation or likely to be investigated for any crime." However, Trooper Grimm testified that he observed something coming from the passenger side of the vehicle after he activated the overhead lights and initiated the traffic stop. According to Trooper Grimm, once officers approached the vehicle they observed Mr. Campbell exhibiting signs of impaired behavior—slurred speech, talking fast, hard to understand—which prompted further investigation. Trooper Grimm testified that he observed drug paraphernalia in the vehicle, in the form of a pen tube with white residue under Mr. Campbell's feet, and residue of a white powder substance on Mr. Campbell's nostril, the side of his face, and on his shirt. At this point Trooper Grimm reviewed the video footage, Trooper Bissonnette retrieved the baggies Mr. Campbell discarded, and they confirmed that Mr. Campbell had thrown the baggies containing cocaine from the vehicle after he became aware that a traffic stop was underway.

{¶14} Based on these circumstances, a jury could have reasonably concluded that Mr. Campbell knew an investigation into his drug activities was likely to occur, and that Mr. Campbell threw the baggies from the vehicle in an effort to impair the value or availability of that evidence in a likely investigation. *Straley* at ¶ 19. Viewing the evidence presented at trial in a light most favorable to the State, we conclude the evidence was sufficient to permit the jury to find Mr. Campbell guilty of tampering with evidence. Accordingly, his first assignment of error is overruled.

**Assignment of Error II**

**Mr. Campbell's conviction for tampering with evidence under R.C. 2921.12(A)(1) is against the manifest weight of the evidence. * * *[.]**

{¶15} In his second assignment of error, Mr. Campbell argues that the jury lost its way when it found him guilty of tampering with evidence. When considering an argument that a criminal conviction is against the manifest weight standard, this Court is required to

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

{¶16} Mr. Campbell asserts that "at the time the traffic stop was initiated there is nothing in the record to establish that the passenger, Mr. Campbell, was under investigation or was likely to be investigated." Without any citation to the record, Mr. Campbell offers only a brief summary of his sufficiency argument, claiming a lack of evidence in the record to support his tampering charge. However, Mr. Campbell has not articulated an argument regarding the weight of the evidence and has failed to support his contentions with respect to this assignment of error as required by App.R. 16(A)(7). "This court will not create or develop a manifest weight argument on Mr. [Campbell]'s behalf." *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 47.

{¶17} We conclude that Mr. Campbell has failed to demonstrate that his conviction for tampering with evidence is against the manifest weight of the evidence. Mr. Campbell's second assignment of error is overruled.

III.

{¶18} We affirm the judgment of the Medina County Court of Common Pleas convicting Mr. Campbell of tampering with evidence. However, upon review of the record, this Court has identified inconsistencies between the trial court's sentencing and judgment entry of December 26, 2017, the certificate of judgment, the indictment, and the jury's verdict. Count one of the indictment charged Mr. Campbell with possession of drugs in violation of R.C. 2925.11(A)(C)(4)(b), a felony of the fourth degree. Initially, the caption of the indictment incorrectly listed the subsection as R.C. 2925.11(A)(C)(4)(a)[2], though the body of the indictment stated the correct section and the document consistently states that the charge is a felony of the fourth degree. The caption was later corrected upon the State's motion, and the trial court's August 29, 2017 journal entry amended the caption of the indictment to R.C. 2925.11(A)(C)(4)(b)

{¶19} With respect to count one, the jury found Mr. Campbell guilty of possession of drugs and further found that he possessed an amount of cocaine that equaled or exceeded 5 grams, which constitutes a fourth degree felony violation of R.C. 2925.11(A)(C)(4)(b). However, the trial court's October 31, 2017 journal entry stated that the jury found Mr. Campbell guilty of R.C. 2925.11(A)(C)(4)(a), rather than subsection (b). The December 26, 2017 sentencing and judgment entry again included the error, stating that Mr. Campbell was convicted

_____

[2] The caption indicated that the charge was for a felony of the fourth degree, which is consistent with R.C. 2925.11(A)(C)(4)(b). R.C. 2925.11(A)(C)(4)(a), however, is a felony of the fifth degree.

of possession of drugs in violation of R.C. 2925.11(A)(C)(4)(a) as a felony of the fourth degree. Furthermore, the certified copy of judgment and sentence issued by the Medina Clerk of Courts does state the correct subsection, indicating that Mr. Campbell was found guilty of R.C. 2925.11(A)(C)(4)(b) as a felony of the fourth degree. However, the certified copy contains another error, in that it incorrectly states that Mr. Campbell pled guilty to charges in the indictment when, in fact, he pled not guilty and his guilt was determined by the jury.

{¶20} Mr. Campbell's assignments of error are overruled. The judgment of the Medina County Common Pleas Court is affirmed and remanded for the trial court to correct the abovementioned typographical errors and prepare a nunc pro tunc sentencing entry to properly reflect the record.

Judgment affirmed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CONCURS.

CALLAHAN, J.
DISSENTING.

{¶21} I disagree with the lead opinion's conclusion that constructive knowledge of an impending investigation could be imputed to Mr. Campbell. For that reason, I respectfully dissent.

{¶22} R.C. 2921.12(A)(1) specifies that the accused must act with knowledge "that an official proceeding or investigation is in progress, or is about to be or likely to be instituted[.]" This element of the offense requires the intention to "impair the value or availability of evidence that relates to an existing or likely official investigation or proceeding." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, syllabus. Consequently, not every attempt to discard contraband constitutes tampering with evidence. *See id.* at ¶ 15-17.

{¶23} In *Straley*, the Ohio Supreme Court rejected this Court's position that because "[a]n investigation may quickly proceed beyond its initial purpose[,]" a defendant could be convicted of tampering by discarding evidence unrelated to the investigation at hand. *Id.* at ¶ 15, quoting *State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, ¶ 23 (9th Dist.). The facts of *Skorvanek* are similar, in many respects, to the facts in this case: law enforcement officers began following the defendant's vehicle after noting a traffic violation; as they followed, they

saw the driver throw something from the car. *Skorvanek* at ¶ 2. After the officers completed the traffic stop, one officer retraced the driver's path on foot and retrieved evidence of a drug offense. *Id.* This Court rejected the defendant's argument that the elements of R.C. 2921.12(A)(1) were not met because evidence of drug possession was unrelated to the impending investigation of the traffic stop and upheld the defendant's tampering conviction based on the inference that the defendant acted purposely from the totality of the surrounding circumstances. *Id*. at ¶ 20-24. The Ohio Supreme Court disagreed, holding that the "plain meaning" of R.C. 2921.12(A)(1) required a different analysis:

> R.C. 2921.12(A)(1) requires the state to prove that an offender, with knowledge of an ongoing (or likely) investigation or proceeding, tampered with (altered, destroyed, concealed, or removed) a record, document, or thing "with purpose to impair its value or availability *as evidence in such proceeding or investigation*." (Emphasis added.) The word "such" is an adjective commonly used to avoid repetition. It means "having a quality already or just specified." *Webster's Third New International Dictionary* 2283 (1986). In this instance, "such" investigation refers back to the investigation just specified, i.e., the one that that the defendant knows is ongoing or is likely to be instituted. Therefore, the evidence must relate to that investigation; otherwise, the word "such" loses all meaning. The state's argument that all evidence recovered in an investigation should be included in the ambit of the tampering statute would require us to change the language from "such" proceeding or investigation to "any" proceeding or investigation.

(Emphasis in original.) *Straley* at ¶ 16.

{¶24} The Supreme Court elaborated on this conclusion in *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449. In *Barry*, the Supreme Court considered "'whether a person who hides evidence of a crime that is unmistakable to him or her commits tampering with evidence'" without other indications that an investigation was imminent. *Id.* at ¶ 1. The Court concluded that "Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense, and therefore, the fact that an act was unmistakably a

crime does not, by itself, establish that the accused knew of an investigation into that crime or that such an investigation was likely to be instituted." *Id.* at ¶ 2.

{¶25} Post-*Straley* cases fall between two extremes with respect to the knowledge of the accused. There is insufficient evidence of tampering when defendants clearly have no knowledge of a pending or imminent investigation. *See*, *e.g.*, *Straley* at ¶ 1-4, 19 (the defendant discarded evidence of a drug violation after a traffic stop had concluded and the officers decided not to pursue charges). *See also Barry* at ¶ 5-6, 27 (the defendant concealed heroin on her person before commencing a drive from Ohio to West Virginia and was later pulled over for several traffic violations). On the other hand, there is sufficient evidence of tampering when a defendant is affirmatively on notice that an investigation may be initiated. *See*, *e.g.*, *State v. Bradshaw*, 4th Dist. Scioto No. 17CA3803, 2018-Ohio-1105, ¶ 48, 50 (a tampering conviction was supported by sufficient evidence when parolee who was under arrest had been warned specifically that he would face further charges for bringing contraband into jail). *See also State v. Walker*, 9th Dist. Summit No. 25744, 2011-Ohio-4779, ¶ 22-23 (upholding a tampering conviction, pre-*Straley*, when a parolee had been informed of the rules that he was to follow while on parole, was in violation of those rules, and was subject to an arrest warrant at the time of the alleged tampering).

{¶26} This case is more similar to *Straley* and *Barry* than to *Bradshaw*. Mr. Campbell was the passenger in a car that was noted to have committed a lane change violation. Law enforcement officers turned on their lights to initiate an investigation of the driver's traffic violation. At that point, the driver of the vehicle may have known that there was an imminent investigation into his traffic violation, but that investigation did not relate either to Mr. Campbell or to a drug offense. Indeed, there is no evidence that there *was* an investigation into Mr.

Campbell's conduct at the time that he discarded the drugs or, even if there had been, that Mr. Campbell knew of any investigation into his conduct at the time. *Compare State v. Wilcox*, 2d Dist. Clark No. 2013-CA-94, 2014-Ohio-4954, ¶ 26 (concluding that a driver who was being pulled over for a traffic violation could have had no knowledge of a split-second determination to initiate an investigation for a weapons offense at the time he concealed a handgun).

{¶27} In this respect, Ohio law does not impute knowledge of an impending investigation to an accused based on his knowledge that he committed a drug offense, even if that knowledge is unmistakable. *See Barry* at ¶ 2. That Trooper Grimm later noted a white, powdery substance on Mr. Campbell's person and a cut-off pen at his feet and that Mr. Campbell's' speech was impaired may indicate that Mr. Campbell committed a drug offense— but Mr. Campbell's presumed knowledge of such an offense cannot lead this Court to impute knowledge of an impending investigation to him.

{¶28} I would, therefore, sustain Mr. Campbell's first assignment of error and conclude that his second assignment of error, which argues that his conviction is contrary to the weight of the evidence, is moot.

{¶29} I respectfully dissent.


APPEARANCES:

CHRISTINA MADRIGUERA, Assistant State Public Defender, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.